**Seldon R. GLENN, former Collector of Internal Revenue, and William M. Gray, District Director of Internal Revenue, Appellants,**

**v.**

**Oscar PENN, Frank Penn, and W. E. Penn, Appellees.**

**No. 13230.**

United States Court of Appeals Sixth Circuit.

Jan. 3, 1958.

---

1. Watson v. United States, 10 Cir., 222 F.2d 689, 691.

Arthur I. Gould, Washington, D. C., for appellants, Charles K. Rice, Ellis N. Slack, A. F. Prescott, Walter Akerman, Jr., Washington, D. C., J. Leonard Walker, Louisville, Ky., on the brief.

Walter B. Smith, Louisville, Ky., for appellees, Heber E. Johnson, Louisville, Ky., on the brief.

Before McALLISTER and MILLER, Circuit Judges, and LEVIN, District Judge.

## PER CURIAM.

Appellees, who were growers of tobacco in Kentucky, paid income tax deficiencies assessed against them for the fiscal years ending the last day of February 1947 and 1948 and, after failing to obtain refunds claimed by them, brought this action in the District Court to recover the amounts claimed. The case was heard by a jury.

Most of the facts are not in dispute. Appellees delivered tobacco to a warehouse company for sale at auction in accordance with the usual custom of the trade. Following the sale, the warehouse company would deduct certain expenses and its commission and pay the net proceeds to appellants. With respect to the taxable years in question the sales were made and checks for the net proceeds therefrom drawn by the warehouse company to the order of appellees in the fiscal years ending the last day of February 1947 and 1948 but they were not delivered or mailed to appellees until after March 1, the beginning of the taxpayers' next fiscal year.

The taxpayers filed their income tax returns on a cash basis and reported the net proceeds as income for the fiscal years in which the checks were actually received by them  The Commissioner ruled that the net proceeds from the sales was income for the fiscal year in which the sales were made and during which the net proceeds therefrom were made available to the taxpayers by the drawing of the checks therefor even though the checks were not received during such fiscal year.

The legal issue does not appear to be in dispute. If the net proceeds became available to the taxpayers during the fiscal years in which the sales were made and the taxpayers merely refrained from exercising their undisputed legal rights to take possession of the checks the money was constructively received by the taxpayers at that time and was taxable income although not actually received until later. Williams v. U. S., 5 Cir., 219 F.2d 523, 527; United States v. Pfister, 8 Cir., 205 F.2d 538, 541; Kuehner, 20 T.C. 875, 883–885. On the other hand, if the contract between the parties under which the tobacco was sold at auction provided that payment of the net proceeds was not to be made to the taxpayers until after March 1 and taxpayers had no legal right to require its payment before that time, there was no constructive receipt of the money prior to that time and the taxpayers were correct in not including it as income for the taxable years in question. Commissioner v. Oates, 7 Cir., 207 F.2d 711; Amend, 13 T.C. 178, 185; Veit, 8 T.C. 809, 818.

Following the close of the evidence in the case the District Judge overruled appellant's motion for a directed ver-

dict and directed a verdict for the taxpayers, expressing the view that under the custom of the trade and the transaction between the parties there was a good faith agreement that the warehouse company would sell the tobacco during the auction season but would defer paying the taxpayers the proceeds therefrom until on or after March 1 following. If this factual determination was correctly made, the ruling based thereon was proper.

We are of the opinion, however, that the evidence was not sufficient to support a directed verdict on this factual issue and that the question should have been submitted to the jury. Any agreement that existed between the parties was oral in nature. While the evidence is strong that it was the custom between the parties to defer the payment until after the close of the fiscal year, it is very sketchy about any enforceable contract to that effect. Most of appellees' evidence on this issue pertains to why it was advantageous to taxpayers to defer payment and the witness's conclusion that there was an agreement *"or understanding"* that "he was to receive the money after the first of March" and that in order for the taxpayers to have obtained the money before March 1, they "would have had to have broken the *arrangements*." What the parties actually said to each other and the exact time it was said, is not disclosed by the evidence. On the other hand the witness admitted on cross-examination that the matter came up in conversation in which one of the taxpayers said before he brought his tobacco for sale that "he did not want these checks until after the first day of March" and that "you just stand around the warehouse and talk about everything, and he just said if we would sell his tobacco, would we hold his money. * * * That is sort of a loose business, people come in and talk about making arrangements every day, different arrangements about different things." The witness admitted that he didn't tell the taxpayer he couldn't pick up the checks until after the first of March. Coupled with the fact that the checks were actually drawn, and made available to be picked up before March 1, the issue of whether there was an enforceable contract not to make the payment until March 1 should have been left to the jury for determination. Kasper v. Banek, 8 Cir., 214 F.2d 125. An informal arrangement is not necessarily the same as an enforceable contract.

The judgment is reversed and the case remanded to the District Court for a new trial.