ROBERT S. DeHAVEN AND CLEO DeHAVEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82567.     Filed August 31, 1961.

*Dougal C. Pope, Esq.*, for the petitioners.
*Harold Friedman, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge:* The Commissioner has determined a deficiency in petitioners' income tax for the year 1955 of $1,939.34. The deficiency is due to one adjustment made to the net income as reported by petitioners on their joint return. That adjustment is explained in the deficiency notice as follows:

(a) Income has been increased in the amount of $9,722.51 for income received from rice sales. It was determined that rice sales in the above amount were incorrectly reported in income for the prior year for which income was previously decreased in the same amount.

Petitioners assign error as to this adjustment made by the Commissioner. Petitioners in an amended petition say that if the Commissioner is sustained in his determination that the sale of the rice took place in 1955 and not in 1954 as the petitioners contend, then petitioners are entitled to an inventory of rice as of January 1, 1955, of $9,722.51.

The facts have all been stipulated and are found as stipulated. They may be summarized as follows:

Petitioners filed a joint individual income tax return for the year 1955 on or about April 15, 1956, with the district director of internal revenue at Austin, Texas. The income tax return was filed on the cash receipts and disbursements method and petitioners' books and records were kept on that method.

In 1955 and for several years prior thereto petitioners were in the business of farming and their major crop was rice. About 90 percent of their gross income was from the sale of rice. Petitioners' farm and residence are located in Wharton County, Texas, and were so located in 1955, 1954, and several years prior thereto. Petitioner

Robert S. DeHaven will sometimes hereinafter be referred to as petitioner.

During the year 1954 petitioner raised rice. During the latter part of 1954, petitioner entered into a purchase agreement with the Commodity Credit Corporation, hereinafter referred to as the Corporation, an agency of the United States Government, in connection with the rice which he had raised in 1954. He paid the Corporation a fee in order to obtain this purchase agreement. This purchase agreement provided that the rice which petitioner had on hand at that date would be purchased at the United States Government rice price-support level at any time up to June 1, 1955, provided the rice was of a certain minimum grade at the time petitioner exercised his option to sell this rice to the Corporation.

At the time petitioner received this purchase agreement from the Corporation, his rice was stored in the Mauritz Storage and Dryer Company, Ganado, Texas. At this time the warehouse was not a bonded warehouse and it did not become a bonded warehouse until 1955. Rice stored in nonbonded warehouses could not qualify for the Corporation loans.

The purchase agreement was very beneficial to petitioner because it provided him with a market for his rice at the prevailing price-support level provided his rice met the minimum grade standard at the time the rice was sold. In the event that one did not obtain a purchase agreement from the Corporation by January 1, 1955, on his 1954 rice crop, then he could not obtain a purchase agreement from the Corporation at a later date on his 1954 rice crop. In the event that one did not have a purchase agreement on his rice or had not obtained a Corporation loan, then he had either to sell his rice on the open market at the prevailing market price or to store his rice, and in many instances owners of rice had to sell their rice at less than the Government's price-support level where they had not borrowed from the Corporation on their rice or where they did not have a purchase agreement from the Corporation.

After petitioner received the purchase agreement from the Corporation on his 1954 rice crop, he took this purchase agreement, along with the warehouse receipt on this rice, to the Citizens State Bank, hereinafter referred to as the bank, Ganado, Texas, and borrowed the sum of $9,722.51 from the bank. Petitioner signed a chattel mortgage to the bank on this rice, the rice being pledged to secure the loan. This $9,722.51 which petitioner borrowed on his rice crop was about equal to 80 percent of the price-support level of this rice at that time.

Petitioner sold his 1954 crop of rice to the Corporation on June 1, 1955, for the sum of $12,646.43. After selling his rice on June 1, 1955, petitioner paid the bank loan of $9,722.51. Petitioner was per-

sonally liable on the bank loan. The Corporation had no liability on the bank loan and furnished no funds prior to the purchase of the rice on June 1, 1955, by the Corporation. The Corporation's only connection with the loan was by virtue of its purchase agreement with petitioner in his individual capacity.

The market value as of December 31, 1954, of petitioner's stored rice was approximately $12,646.43. Petitioner did not have any items as of December 31, 1954, other than the rice pledged to the bank, that would properly be included in inventory.

In years prior to 1954, the practice of petitioner had been to sell his rice in the year in which it was grown. Petitioners have never used inventories in connection with filing their income tax returns. For the year 1954, petitioners included the sum of $9,722.51 in their income as proceeds from the sale of rice.

On all loan programs of the Corporation during 1954 the producer obtained 95 percent of the support price at the time of the loan.

Petitioners did not show any beginning or ending inventory on their individual income tax returns when they filed their 1954 and 1955 returns.

Petitioner grew rice during the year 1955, and during the latter part of 1955 he received a loan from the Corporation on his 1955 rice crop and included the amount of this loan in his 1955 income. Upon an audit of this 1955 income tax return by an internal revenue agent, this agent determined that the proceeds from this loan were proper to include in 1955 income, the petitioners having elected to include it.

The internal revenue agent who audited petitioners' 1954 income tax return determined that petitioners had a loss for the year 1954 in the amount of $6,926.01. This $6,926.01 figure was determined prior to the allowance of itemized deductions which would appear on page 2 of their income tax return and prior to the allowance of the $2,400 deductions for personal exemptions of petitioners and their two minor children. In connection with petitioners' income and expenses for 1954, there were no unusual items of income or deductions for that year.

Petitioners in their brief state the issues as follows:

1. Are loans in the amount of $9,722.51 which Petitioners received on their rice crop in 1954 includable in their 1954 income under the provisions of Section 77, Internal Revenue Code of 1954?

2. In the event that the above question is answered in the negative, then the alternative question is whether Petitioners are entitled to an ending inventory of rice as of December 31, 1954, in the sum of $12,646.43, the stipulated value?

We shall take up the issues in the order of their statement by petitioners in their brief.

As to issue 1, petitioners rely on section 77, 1954 Code.[1] It seems manifest to us that section 77 is not applicable to petitioners' case insofar as his 1954 rice crop is concerned. Petitioner obtained no commodity credit loan from the Corporation in 1954. His rice produced in that year was stored in a warehouse which at that time was not a bonded warehouse and the Corporation made loans to rice growers only where their rice was stored in a bonded warehouse. Petitioner did obtain from the Corporation a purchase agreement by which the Corporation agreed to purchase his rice any time up to June 1, 1955, at the United States Government price-support level for rice. No doubt, as petitioners contend, this purchase agreement by the Corporation with petitioner was very helpful to petitioner in obtaining his loan of $9,722.51 from the bank at Ganado, Texas. But it was by no means, either in form or substance, a loan made to petitioner by the Corporation such as comes within the provisions of section 77 of the 1954 Code.

Doubtless it is unfortunate for petitioner, as he argues on brief, to have the income tax on the proceeds of his rice crops raised in 1954 and 1955 both fall in 1955, but it is not our function to make laws. Our function is to interpret them as Congress has written them and we are unable to interpret the loan of $9,722.51 which petitioner obtained in 1954 from the bank, secured by a chattel mortgage on the rice which was then stored in a nonbonded warehouse, as a loan made by the Corporation to petitioner and coming within the provisions of section 77. Inasmuch as petitioner was on a cash basis, we think the sum of $12,646.43 which he received for his 1954 rice crop when he sold it to the Corporation on June 1, 1955, must be included in his gross income for 1955. The $9,722.51 was not constructively received in 1954. Cf. *Oliver* v. *United States*, 193 F. Supp. 930.

We hold against petitioners and sustain respondent on this issue.

We shall next take up and decide issue 2, which is the issue raised by petitioners in the alternative. In this alternative issue raised in their amended petition, petitioners contend that if our Court should decide against them on issue 1, then they should be entitled to an ending inventory of $12,646.43 at December 31, 1954, which was the value of their 1954 rice crop at that time. We do not think petitioners can be sustained in this contention.

---

[1] SEC. 77. COMMODITY CREDIT LOANS.

(a) ELECTION TO INCLUDE LOANS IN INCOME.—Amounts received as loans from the Commodity Credit Corporation shall, at the election of the taxpayer, be considered as income and shall be included in gross income for the taxable year in which received.

(b) EFFECT OF ELECTION ON ADJUSTMENTS FOR SUBSEQUENT YEARS.—If a taxpayer exercises the election provided for in subsection (a) for any taxable year, then the method of computing income so adopted shall be adhered to with respect to all subsequent taxable years unless with the approval of the Secretary or his delegate a change to a different method is authorized.

The facts clearly show that petitioner is a rice farmer and that in the year 1955 his tax return was filed on the cash method of accounting. His books and records were kept on the same basis, and were so kept in prior years. The Commissioner did not change petitioner's regular method of accounting but merely made an adjustment which he viewed as necessary to reflect the proper method of reporting the sales price which petitioner received for his rice crop harvested in 1954 but which he did not sell to the Corporation until June 1, 1955. Section 1.471–6, Income Tax Regs., provides as follows:

**Sec. 1.471–6 Inventories of livestock raisers and other farmers.**

(a) A farmer may make his return upon an inventory method instead of the cash receipts and disbursements method. It is optional with the taxpayer which of these methods of accounting is used but, having elected one method, the option so exercised will be binding upon the taxpayer for the year for which the option is exercised and for subsequent years unless another method is authorized by the Commissioner as provided in paragraph (e) of § 1.446–1.

As stated in the regulation, a farmer may make his return upon an inventory method instead of upon a cash receipts and disbursements method, and it is optional with the taxpayer which of these methods is used. But having elected one method, the option so exercised is binding upon the taxpayer for the year for which the option is exercised and for subsequent years, unless another method is authorized by the Commissioner. Petitioners did not seek and respondent did not authorize a change from a cash method to an inventory-accrual method of accounting. Certainly that seems clear from the record.

We think that, under the facts which have been stipulated and which are not in dispute, this second contention which was raised in the alternative must be denied.

*Decision will be entered for the respondent.*