**Trevanion M. Fulbright McCAULEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. LR–60–C–54.**

United States District Court
E. D. Arkansas, W. D.

May 5, 1961.

J. G. Williamson, Little Rock, Ark., for plaintiff.

Osro Cobb, U. S. Atty., James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., George Hrdlicka, Atty., U. S. Dept. Justice, Washington, D. C., for defendant.

HENLEY, Chief Judge.

This suit for refund of federal income taxes paid by plaintiff for the years 1956 and 1957 was tried to a jury and submitted on special interrogatories as authorized by Rule 49(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The jury answered the interrogatories in a manner favorable to plaintiff, and defendant has now moved for the entry of judgment in its favor notwithstanding the jury's answers to the interrogatories.

Plaintiff, Mrs. Trevanion M. Fulbright McCauley, during 1956 and part of 1957

was the widow of C. C. Fulbright who died testate on June 29, 1953, naming plaintiff as the executrix of his will and as his sole legatee and devisee.[1]  Prior to Mr. Fulbright's death, he and his wife had customarily filed joint federal income tax returns, and the 1953 return was filed on a joint basis by Mrs. Fulbright in her individual capacity and in her representative capacity as executrix.

The Commissioner of Internal Revenue determined that certain monies received by Mrs. Fulbright in 1953 after her husband's death by virtue of actions taken by the directors of two corporations in which Mr. Fulbright was interested constituted taxable income and assessed a deficiency of approximately $12,000 for the year 1953. That assessment was paid, and a claim for refund was filed by Mrs. Fulbright in both her individual and representative capacities. In other words, Mr. Fulbright's estate was made a party to the refund claim. Said claim originally was disallowed by the Commissioner and a suit was instituted in this Court by Mrs. Fulbright to recover the deficiency. At length, however, the claim for refund was allowed and finally was paid in full January 8, 1958.

Throughout the pendency of the claim for refund of the 1953 deficiency payment, Mr. Fulbright's estate was kept open. It was finally closed July 8, 1958. In both 1956 and 1957 securities owned by Mr. Fulbright in his lifetime produced substantial amounts of income. With respect to each of those years Mrs. Fulbright filed an individual income tax return reflecting income received by her in her own right and not as a result of inheritance from her late husband. As executrix she also filed for those years separate fiduciary returns which reflected the income derived from the securities left by Mr. Fulbright.

The Commissioner took the position that the administration of the C. C. Fulbright estate had been unduly prolonged and should have been closed not later than

1. Plaintiff married her present husband in 1957, but for convenience she will be referred to as Mrs. Fulbright or as plaintiff.

the end of 1955, and that the income shown on the estate income tax returns for 1956 and 1957 as income of the estate of Mr. Fulbright should have been included in Mrs. Fulbright's individual returns for those years, which, of course, would have increased her income tax liability very substantially. Consonant with that position the Commissioner assessed against plaintiff individually a deficiency of $32,313.05, plus interest, with respect to 1956, and a deficiency of $22,368.47, plus interest, with respect to 1957. Those deficiencies having been paid by Mrs. Fulbright and her claims for refunds thereof having been denied, this suit followed.

It was and is the theory of plaintiff that she was justified in holding her former husband's estate in administration until the claim for refund of the 1953 assessment was settled, that the administration was not unduly prolonged, and that she properly returned the income produced by Mr. Fulbright's securities as the separate income of his estate, as provided by 26 U.S.C.A. § 641, rather than as her individual income.

In resisting this claim the Government takes the position that the administration of the estate was unduly prolonged within the meaning of the Treasury Regulations on Income Taxes, § 1.641(b)–3 (1954 Code), and that the income reported as estate income for 1956 and 1957 had in fact been distributed during those years to plaintiff individually. In addition the Government contends that it was within the unrestricted power of Mrs. Fulbright individually to appropriate to her own personal use the income derived from the securities in question and, in fact, to distribute to herself individually the income producing securities themselves, and that in those circumstances she should be considered as having constructively received personally the 1956 and 1957 income which was returned as the separate income of the estate.

Upon the trial of the case the Court considered that the question whether the administration of the Fulbright estate had been unduly prolonged and the question whether there had been an actual distribution of estate income to Mrs. Fulbright during either of the subject years were essentially questions of fact which should be submitted to the jury. The Government's constructive receipt theory presented an issue of law only, and that theory was not submitted to the jury.[2] The jury found by its answers to the interrogatories that the administration of the Fulbright estate was not unduly prolonged, and further found that in neither 1956 nor 1957 was there any distribution of estate income to Mrs. Fulbright personally.

In its motion now under consideration the Government alleges that the evidence presented at the trial conclusively demonstrated that the administration of the estate was unduly prolonged, that the income reported by the estate for both 1956 and 1957 was actually distributed to Mrs. Fulbright, and that plaintiff by choice and of right could have caused the distribution to herself of the assets producing the estate income as early as 1955. The Court will discuss those contentions in their order.

## I.

Section 641(a) of the Internal Revenue Code of 1954 provides that the federal income tax imposed on individuals shall apply to the taxable income of estates or of any kind of property held in trust, including "income received by estates of deceased persons during the period of administration or settlement of the estate." 26 U.S.C.A. § 641(a) (3). And section 641(b) of the Internal Revenue Code provides that the taxable income of an estate or trust shall be computed in the same manner as in the case of an individual, except as otherwise provided, and that the "tax shall be computed on

2. It was concluded by the Court that if the jury resolved either or both of the factual questions in favor of the Government, it would become unnecessary to pass upon the validity of the Government's constructive receipt theory.

such taxable income and shall be paid by the fiduciary."

Section 661(a), 26 U.S.C.A. § 661(a) provides that in computing the taxable income of the estate for any taxable year there shall be deducted from such income the sum of any amount of income for such taxable year required to be distributed currently, and any other amounts properly paid or credited or required to be distributed for such taxable year, but that the deduction from the income of the estate shall not exceed the distributable net income of such estate.

The items of income which are to be deducted from the income of the estate are to be included in the gross income of the beneficiary, and the latter is taxable thereon as an individual. In this connection section 662, 26 U.S.C.A. § 662 provides that there must be included in the gross income of the beneficiary all income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not, and all other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year.

Section 1.641(b)–3(a) of the Regulations, insofar as here pertinent, reads as follows:

"The income of an estate of a deceased person is that which is received by the estate during the period of administration or settlement. The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. * * * However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration. Further, an estate will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liability and expenses (not including a claim by a beneficiary in the capacity of beneficiary)."

It is urged by the Government that not later than 1955 the debts and obligations of Mr. Fulbright, including his federal estate tax liability, had been ascertained and paid, and that there had been a partial distribution of assets to plaintiff; that the only unfinished business of the estate was the liquidation of the claim for refund of the 1953 taxes, which claim was an asset of the estate and ultimately of plaintiff herself; that the existence of the claim did not justify continuance of the administration; that the estate could and should have been wound up not later than the end of 1955; and that the continuance of the administration through 1956 and 1957 was, as a matter of law, an undue prolongation of such administration. Plaintiff contends, on the other hand, that until the claim for refund was finally settled, plaintiff was justified in keeping the estate open.

From its consideration of the governing statute and regulation, the Court is persuaded that the question of whether the administration of an estate has been "unduly prolonged" is one of fact, depending on the diligence of the administrator in discharging his duties and the reasonableness of his course of action. Merten's Law of Federal Income Taxation, Vol. 6, § 36.47 and cases there cited, including Patton v. United States, D.C.Tex., 3 A.F.T.R.2d 1475; Alston v. Commissioner of Internal Revenue, 8 T.C. 525; Estate of Robert W. Harwood, 46 B.T.A. 750. Cases cited by the Government, such as Stewart v. Commissioner of Internal Revenue, 5 Cir., 196 F.2d 397, and Chick v. Commissioner of Internal Revenue, 1 Cir., 166 F.2d 337, are not to the contrary. Of course, the facts in a

given case may be so clear that reasonable men could not differ on the question of whether the administration was or was not unduly prolonged, in which case the question is one of law.

In the case at bar the jury was instructed in connection with the question now under consideration that the burden was upon plaintiff to prove by a preponderance of the evidence that the administration of the Fulbright estate was not unduly prolonged. It was also told that if it found from a preponderance of the evidence that plaintiff by the exercise of reasonable diligence could not have completed her duties as executrix of her husband's estate by January 1, 1956, and that she reasonably required the years 1956 and 1957 to complete her duties as executrix, then the administration was not unduly prolonged, but that if by the exercise of reasonable diligence she could have completed her duties prior to January 1, 1956, then the extension of the administration through 1956 and 1957 was unduly prolonged.

The jury was further, and more specifically, instructed that the reason for the continuation of the administration through 1956 and 1957 was to enable the claim for the 1953 tax refund to be prosecuted in the joint names of the estate and of plaintiff, and that while the estate was a proper party to the claim and Mrs. Fulbright had a right to prosecute the claim in the joint names of herself and of the estate, still she could have closed the estate prior to the settlement of the claim, and thereafter could have continued the prosecution thereof in her own name and received full payment thereof from the Government. The jury was then given the following instruction:

"In these circumstances the ultimate question for you to determine in connection with this interrogatory is whether Mrs. Fulbright acted reasonably or unreasonably in determining not to close the estate until the claim for refund * * * was settled. If you find from a preponderance of the evidence that in determining not to close the estate until the 1953 claim for refund had been settled, Mrs. Fulbright acted reasonably, that is to say if she acted as an executrix of reasonable diligence and prudence would have acted in the same or similar circumstances, then the administration of the estate was not unduly prolonged. On the other hand, if her action in keeping the estate open for the purpose of prosecuting the claim for refund was unreasonable, then the administration of the estate through 1956 and 1957 was unduly prolonged within the meaning of the law.

"Now it is not contended here that either Mrs. Fulbright or her advisers acted otherwise than in good faith in keeping the estate open after the end of 1955. But the question is not whether Mrs. Fulbright acted in good faith in keeping the estate open in 1956 and 1957 but whether she acted reasonably, that is to say, whether she acted as an executor or administrator of reasonable diligence and prudence would have acted in the same or similar circumstances. If she did not act reasonably, then her subjective good faith would not be material or controlling."

By its answer to the interrogatory the jury found that Mrs. Fulbright acted reasonably in holding the estate open until the 1953 refund claim was settled, and that the administration was not unduly prolonged, and the Court is of the opinion that those findings of the jury have adequate evidentiary support and should not be disturbed.

As to the duration of the administration, the Government concedes that the estate was a proper party to the refund claim, and it does not accuse Mrs. Fulbright or her representatives of any procrastination in the prosecution of that claim. It takes the position that the estate was not an indispensable party to the claim and that Mrs. Fulbright was, as

a matter of law, required, as far as the federal income taxes were concerned, to close the estate and continue to prosecute the claim as an individual. The Court does not agree. On the other hand, the Court believes that the jury was justified in concluding that since the estate was a proper party to the claim Mrs. Fulbright acted reasonably and with due diligence in joining the estate in the prosecution of the claim and in keeping the estate open until the claim was disposed of one way or the other. Certainly the jury was not required to say that in choosing her course of procedure she acted arbitrarily or capriciously.

Mrs. Fulbright and her advisers may well have felt that the Internal Revenue Service might at some stage of the proceedings take the position that the presence of the estate as a party to the claim was not only necessary but indispensable, and that to close the estate with the claim still unsettled might multiply difficulties or increase confusion.

▮ That the continuation of the administration of the estate resulted in a substantial tax advantage to plaintiff is not material. She was not required to handle the estate or to handle her own affairs in the manner most advantageous to the Government taxwise. So long as she acted within the law and the regulations she had the right to enjoy any tax advantage which might result from her actions, and, indeed, she had, in general, a right to minimize her tax liabilities or avoid them altogether so long as she acted legally.

## II.

The Government's claim that the income in question was actually distributed to plaintiff in 1956 and 1957 is based upon the fact that during those years funds of the estate were commingled with plaintiff's own funds in a common bank account or common bank accounts upon which she had unlimited freedom to draw.

▮ On this issue the jury was told that the burden was upon the plaintiff to prove by a preponderance of the evidence with respect to each of the tax years involved that there was no actual distribution of estate income to her personally. The jury was then instructed:

"You are instructed that it is not contended in this case that during either 1956 or 1957 Mrs. Fulbright, as executrix of her husband's estate, made any formal distribution to herself as an individual of any income earned by the estate during either of those years. It is undisputed, however, that income earned by the estate was in fact deposited in Mrs. Fulbright's personal bank accounts and was subject to her unrestricted withdrawals.

"Now, if Mrs. Fulbright in depositing estate income in her own personal accounts intended to appropriate all or any part of such income to her own personal use as beneficiary of the estate, or if she in fact used and treated such income or part thereof as belonging to her, not as executrix of the estate, but as Mr. Fulbright's sole beneficiary, then such conduct on her part would amount to a distribution of the estate income or part thereof to herself personally even though there was no express or formal distribution.

"On the other hand, notwithstanding the fact that Mrs. Fulbright commingled estate income with her own personal funds, if she actually and in good faith recognized such income as the property of the estate and not of herself in her individual capacity, then such commingling would not of itself constitute a distribution of estate income to herself as an individual.

"Further, if you find that Mrs. Fulbright advanced her own personal funds to the estate to discharge obligations thereof, and that her subsequent deposits of estate income in her own accounts did not exceed the amount of her advances, if any, and that such deposits were actually and

in good faith considered by her as repayments of such advances and as going in reduction of her claims against the estate, then such deposits would not be considered as distributions of income to the beneficiary."

In the Court's estimation the submission of the question of actual distributions of income to the beneficiary, under the instructions above quoted, was justified by the evidence, and the jury's findings in favor of the plaintiff were supported by the evidence.

### III.

There remains for consideration the Government's contention that Mrs. Fulbright constructively received the estate income in 1956 and 1957. It is urged that she, in her individual capacity, had such complete control over the assets as to be tantamount to individual ownership thereof, and that she must be considered as having received personally the income derived from those assets.

In discussing this contention it must be kept in mind that federal income tax liability is governed essentially by statute and regulation, and that liability, if it exists, must be found within the framework of the statute and regulations, which should be given a uniform interpretation and application without regard to fortuitous advantages which may be gained by the Government on the one hand or by taxpayers on the other hand. In some instances the Government will gain the advantage; in other instances, the taxpayer will benefit.

While the Government's argument has been presented most plausibly, the Court is convinced that the Government's theory goes beyond the statute and regulations, and that to adopt it would be to extend unduly the doctrine of constructive receipt.

In sections 641, 661, and 662 of the Internal Revenue Code and in Regulations § 1.641(b)–3, the Congress and the Treasury have dealt specifically and fully with the taxation of the income of estates of decedents. When those sections of the Code and the cited regulation are read together, it is clear that the income of the estate of a decedent is taxable to the estate as a separate entity, unless: (1) the administration is unduly prolonged, or (2) the income is in fact distributed during the tax year involved, or (3) such income, although not actually distributed, is "required to be distributed" during such year. No reason is shown and none suggests itself why the Court should go outside the statute and regulations in determining the incidence of the taxes here involved. To the extent that the doctrine of constructive receipt has play in connection with the taxation of the income of decedents' estates it is encompassed in the concept of an administration being "unduly prolonged," as that term is defined in the regulations, and in the statutory requirement that the beneficiary shall report as his individual income that which is "required to be distributed" to him out of the estate during the tax year in question. Here, the jury has found that the administration was not "unduly prolonged," and the income of the Fulbright estate was not "required to be distributed" while the estate was in administration.

This case is distinguishable from Oliver v. United States, 193 F.Supp. 930. In Oliver the income in question was clearly taxable to Mr. Oliver. The problem was whether said income was taxable to him in 1957 or whether it should have been included in his 1958 return. Here, the question is whether the income earned in 1956 and 1957 by the assets owned by Mr. Fulbright during his lifetime should be taxed to his estate or whether it should be taxed to Mrs. Fulbright personally. The Oliver situation is governed by section 451 of the Internal Revenue Code, 26 U.S.C.A. § 451 and regulations promulgated thereunder, whereas the situation presented here is governed by sections 641, 661, and 662 and Regulations § 1.641(b)–3. Cases cited by the Government have been considered and in the Court's opinion are distinguishable from this case.

Let defendant's motions for a directed verdict made in the course of the trial and its post-trial motion which has been discussed be overruled, and judgment entered for plaintiff. Counsel for plaintiff may submit a precedent for judgment after first obtaining opposing counsel's approval as to form.