Ruth H. BOHAN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 16866-3.

United States District Court,
W. D. Missouri, W. D.

March 19, 1971.

Ida Turner, Goehring & Turner, Kansas City, Mo., for plaintiff.

John DeBruyn, Dept. of Justice, Washington, D. C., for defendant.

## AMENDED MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT FOR PLAINTIFF

WILLIAM H. BECKER, Chief Judge.

This is a suit for refund of federal income taxes for the calendar year 1957. Plaintiff is the widow of Dr. Peter T. Bohan, who died October 7, 1955. Plaintiff was the executrix and sole residuary legatee and devisee under the will of the decedent. The will of the decedent was admitted to probate in the Probate Court of Jackson County, Missouri, on October 14, 1955. Dr. Bohan's domicile at the time of his death was Jackson County, Missouri.

The Probate Court of Jackson County ordered partial distributions of shares of corporate stock from the estate to plaintiff on May 13, 1957, July 9, 1957, and November 25, 1957. The last distribution included the right to receive a declared dividend payable on December 10, 1957, and certain rights to purchase additional stock. The total value of these distributions was $162,025.00. This sum was much in excess of $29,076.-15, which was the distributable net income of the estate for the year ending December 31, 1957. Because the estate made distributions to plaintiff of stock valued in excess of the distributable net income of the estate for the year, it was determined by the defendant that the estate was entitled to a deduction for its income tax purposes in the amount of the distributable net income ($29,-076.15) under § 661(a) of the Internal

Revenue Code of 1954. The defendant then determined that this sum of $29,-076.15 was income received by plaintiff in 1957 and assessed a deficiency against plaintiff for income tax due on the included amount of $29,076.15 in the gross income of plaintiff. On June 23, 1963, plaintiff filed a claim for refund, alleging that inclusion of the $29,076.15 in her income for 1957 was erroneous. Defendant notified plaintiff on April 13, 1966 that her claim for refund was disallowed. Plaintiff thereafter timely filed her suit for refund on April 9, 1968.

The governing statutes are Sections 661(a) and 662(a) of the Internal Revenue Code of 1954. Section 661(a) allows an income deduction to the estate for "amounts properly paid", "credited" or "required to be distributed" for the taxable year but the deduction shall not exceed the distributable net income of the estate or trust. Under this section:

"A deduction is allowed * * * for the sum of (1) any amount of trust [or estate] income for the taxable year which is required to be distributed currently (including an annuity payable out of income or corpus, to the extent that it is paid out of income) and (2) any other amounts paid, credited, or required to be distributed for the taxable year; however, the deduction allowed under this section may not exceed the distributable net income of the estate or trust for its taxable year."

6A Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 661, p. 6:4204. Section 662(a) requires a reciprocal inclusion in the beneficiary's taxable income of the amounts described in Section 661(a) as deductible by the estate from its income.[1]

---

1. Private rulings of the defendant have come to the attention of the Court. These rulings are interesting but not material to the decision in this case. The rulings state the broad principle —on facts distinguishable from those at bar—that Section 661(a) includes payments of both income and corpus in its applicability. In order to be interpreted consistently with applicable Missouri law in this case, however, that broad principle must be restricted to those instances in which such corpus is properly paid, distributed, or required to be distributed, or credited within the terms of the statute. Under applicable Missouri law, as pointed out hereinafter, only when the debts and obligations of the estate and

To support its position that the amounts of the partial distributions made from the estate to plaintiff in 1957 are includible up to the amount of $29,076.15 in the plaintiff's taxable income, defendant quotes the following paragraph from United States v. Bank of America (C.A.9) 326 F.2d 51, 54, as exemplifying the "spirit of these sections":

the final proportions of the legatees, heirs and devisees can be or have been finally determined is such payment, crediting or distribution unconditional in the sense of the statute.

In the letter ruling, In re Trust of Frederick Scully, June 9, 1959, the Acting Director of the Tax Rulings Division ruled that, when a $25,000 annual payment was made to a beneficiary of a trust under a will it was "includible in the gross income of the beneficiary under the provisions of section 662 of the Internal Revenue Code of 1954 and deductible by the trust under section 661." However, it was noted that the taxable year ended on February 28, 1959; that "(o)n March 4, 1959, the court decreed that the final report of the trustee be approved; that the trust be terminated as of February 28, 1959; that possession of all of the real estate be and is transferred to the beneficiary as of February 28, 1959; that the office fixtures, furniture and machinery used in connection with the operation of the trust be delivered to the beneficiary; that bonds in the amount of $250,000 be delivered to the beneficiary, and that he be paid $140,000 of the $210,902.40 cash on hand, the balance of $70,902.40 to be retained by the trustee for the purpose of paying the income tax due for the past year * * *" The Tax Rulings Division therefore ruled as follows:

"However, it is noted that the decree of the court was dated March 4, 1959, and the personal property referred to therein was not distributed to the beneficiary until after the close of the taxable year of the trust. It is concluded, therefore, that the trust did not terminate on February 28, 1959, for Federal income tax purposes."

The ruling is consistent with that made in the case at bar in its refusal to go outside the statutes and regulations to deem includible in income any amounts not properly paid, credited or required to be distributed in the taxable year.

" * * * [W]here * * * an estate distributes property which exceeds in value *the income which the estate could distribute* (i. e., distributable income), even though the property actually distributed by the estate is corpus, the estate is then deemed, for federal tax purposes, to have distributed the distributable income. Thus, it is entitled to the deduction for

Similarly, in *Machtigall*, March 13, 1968, the ruling was made on the assumption that the distribution of the shares would be finally made in accordance with a prόvision in the will of the decedent. The *Newburger* letter involved a distribution in accordance with the wife's power under the will to invade the corpus of the trust.

Only the *Lacy* ruling of June 14, 1956, appears perhaps to be inconsistent with that at bar. The Tax Rulings Division noted the following to be the pertinent facts in that case:

"Sterling B. Lacy died on March 7, 1955. His will provides that after payment of the decedent's debts and a specific bequest to his wife, the residue of the estate is to be distributed to William S. B. Lacy, his son.

"For the year 1955, the estate had items of income consisting of dividends, interest on bank deposits, interest (fully taxable) on government obligations, and oil royalties. The estate had items of deductions consisting of a loss from the operation of a dairy, a short-term and a long-term capital loss, an allowance for depletion on oil royalties, and a 691(c) deduction arising from the inclusion in the Federal estate tax return of income in respect of a decedent. During the year 1955, the administrator made a distribution to or for the account of the residuary legatee."

Thus, on facts nearly like those at bar, the Tax Rulings Division ruled that "The residuary legatee is required to include in his gross income the amount of the distribution made to him in 1955, to the extent such amount does not exceed the distributable net income of the estate for that year * * *. (Section 662 of the 1954 Code.)" In that case, however, it does not appear that any appropriate state law made such a partial distribution not final, as is the case at bar.

income distributed. The recipient is required, by the same sections, to include in its gross income the amount of the income deemed distributed."[2] (Emphasis added.)

Plaintiff, on the other hand, argues that the distributable net income of the decedent's estate is properly attributable to plaintiff's 1957 gross income only if the income of the estate was required to be distributed to plaintiff, or that income was otherwise properly paid or credited to plaintiff during the year 1957.

Plaintiff argues that the will of decedent made "no provision for payment of the income of the estate during administration to plaintiff, nor to anyone else"; that, in the absence of such a testamentary provision, under the Missouri law of 1957, "income from the assets of an estate during administration" is not properly distributable but rather constitutes assets in the administrator's hands to be applied to the debts, taxes and costs of administration and legal charges against the estate;[3] that no payment could properly have been made to plaintiff from the estate in 1957 because Missouri law prohibits final distributions to an heir before, among other things, all debts of the estate are paid;[4] that the debts and taxes incurred and payable by decedent's estate during 1957 exceeded the distributable net income of the estate;[5] and that therefore the stock distributions were not distributions of the income of the estate which were properly payable during 1957, but rather advances on distributions of the corpus (of the residuary estate) which were properly payable on final distribution on March 9, 1964, the amount of which was not ascertained until that date.

Plaintiff's principal reliance is upon the case of Sitterding v. Commissioner of Internal Revenue (C.A.4) 80 F.2d 939. In that case, the will of the decedent directed $300,000 to be held in trust and the income thereof to be distributed quarterly among his children. In 1929, while the estate was still in the process of administration, a total of $49,322.64 was paid to the children. During the same year, the estate had a gross income of $96,998.84, and a federal estate tax of $34,556.56 and a state inheritance tax of $138,582.41 were paid. Payment of these taxes required that the estate borrow money to pay them. In that case, the Circuit Court of Appeals held that the distributions from the estate to the children were not includible in the latters' 1929 gross incomes for the following reasons:

"The matter must be considered in the light of the applicable probate and administration law. By this law the duty of the executors was to receive the principal of the estate, to inventory it, to ascertain the debts to be paid, including all taxes, and after paying all creditors and taxes and expenses of administration, to strike a balance from which should be paid specific or particular legacies, trust funds should be set up as required by the will, and final balance should

---

2. It is noteworthy that the paragraph quoted from the *Bank of America* case was restricted by the court which decided that case to cases in which local law did not require the amounts "to be treated as and held as corpus." 326 F.2d at 54.

3. Plaintiff cites In re Holmes' Estate, 328 Mo. 143, 40 S.W.2d 616; see also Milens v. Bostian (C.A. 8) 139 F.2d 282, and cases therein cited.

4. § 473.613, RSMo 1949.

5. Plaintiff's brief recites the following facts:

"The personal property in the estate was inventoried at $985,137.31 (P. Ex. 4, p. 4). The value of the estate December 31, 1957, was $706,844.97 (P. Ex. 15, P. 7). There had been a total invasion of corpus of $278,292.34. This is $116,267.34 in excess of the $162,025.00 which the District Director determined to be the value of the stock distributed to plaintiff in 1957, and $269,216 in excess of the $29,076.15 'distributable' income of the estate for 1957, as determined by the District Director."

be distributed to the residuary legatees, of whom the taxpayer was one. As this was not done during the year 1929, there is certainly nothing to show that the comparatively small sums distributed to the taxpayer during that year were in excess of her principal interest as residuary legatee in the estate. It is not shown by the record what the total charges against the estate were, including debts to be paid. The estate has not been fully administered. It is not possible, therefore, to say that the distribution to the taxpayer was income and not merely an advance on account of the corpus. It is still undetermined what amount of corpus the residuary legatee will receive from the estate." 80 F.2d at 941.

Many of the holdings of the *Sitterding* case are now obsolete. For example, its rulings in regard to the deductibility of inheritance taxes are not relevant in this case. But the holding of the case is still viable on the proposition that under some state laws, the value of the residuary estate cannot properly be determined until the estate has been fully administered, or at least until debts, taxes and costs of administration have been ascertained and allowed or paid.

It is apparent, however, from the literal wording of the applicable sections of the Internal Revenue Code and the application of Missouri law to the questions of administration of the estate, that the partial distributions did not include any amount of income "required to be distributed currently", "paid, credited or required to be distributed for the taxable year" within the meaning of § 661(a) and § 662(a) of the Internal Revenue Code of 1954.

■ In 1957, under Missouri law, in the absence of a testamentary directive and judicial decree authorized by statute no legacy or devise was properly distributable to the residuary legatee or devisee until all debts, including taxes and expenses of administration of the estate, have been paid or ascertained and finally allowed. Sections 473.260,

473.263, RSMo 1949; In re Holmes' Estate, 328 Mo. 143, 40 S.W.2d 616; cf. Commissioner of Internal Revenue v. Stearns, Adm. (C.A.2) 65 F.2d 371; Milens v. Bostian (C.A.8) 139 F.2d 282; Smith v. Oliver, Mo.App., 157 S.W.2d 558. All partial distributions made before payment of debts, including taxes and expenses of administration, were subject to return. § 473.613, RSMo 1949. The version of the latter statute which was in effect in 1957 read as follows:

"1. Upon application of the executor or administrator at any time, or on application of any distributee, after the expiration of six months from the date of letters, the court may order the executor or administrator to deliver to any distributee who consents to it possession of any specific real or personal property to which he is entitled under the terms of the will or by intestacy, if other distributees and claimants are not prejudiced thereby. The court, at any time prior to the decree of final distribution, may order him to return the property to the executor or administrator, if it is for the best interests of the estate. The court may require the distributee to give security for such return.

"2. Upon any semiannual, annual or final settlement of the executor or administrator and before the order of final distribution, the executor or administrator, if it appears that there is sufficient money to pay all claims against the estate, partial distribution may be decreed, with or without notice to interested persons, as ordered by the court. A decree of partial distribution made after notice to interested persons is as conclusive as a decree of final distribution with respect to the estate distributed except to the extent that other distributees and claimants are deprived of the fair share or amount which they would otherwise receive on final distribution. Before partial distribution is decreed, the court, upon the request of the executor or administrator, shall require that security be given for the

return of the property so distributed to the extent necessary to satisfy any distributees and claimants prejudiced by the distribution. If partial distribution is made without request for security, the executor or administrator and his sureties are liable for any loss or damage sustained by any interested party as a result thereof."

The law was amended effective June 12, 1957, to provide as follows:

"1. Upon application of the executor or administrator at any time, or on application of any distributee after the expiration of six months from the date of letters, the court may order the executor or administrator to deliver to any distributee any specific real or personal property, or the possession thereof, to which he is entitled or may decree partial distribution if the court believes that other distributees and claimants are not prejudiced thereby. Within a reasonable time after distribution of property under an order or decree made on application of the executor or administrator and before the decree of final distribution, or at any time before the decree of final distribution if partial distribution was not made on application of the executor or administrator, the court may order the distributee to return all or a part of the property or the value thereof. But no order of return shall be made unless application therefor is filed within the time prescribed by section 473.637 and for the purposes therein provided or for other proper purpose.

"2. The partial distribution under this section may be decreed, with or without notice to interested persons, as ordered by the court. A decree of partial distribution made after notice to interested persons is as conclusive as a decree of final distribution with respect to the estate distributed except to the extent that other distributees and claimants are deprived of the fair share or amount which they would otherwise receive on final distribution.

"3. Before partial distribution is made, the court, upon the request of the executor or administrator, shall require that security be given for the return of the property so distributed to the extent necessary to satisfy the interest of any distributee or claimant prejudiced by the distribution. If partial distribution is made without such request for security, the executor or administrator and his sureties are liable for any loss or damage sustained by any interested party as a result thereof." As amended Laws 1957, p. 829, § 1.

The section and the amended section make a legacy which is partially distributed subject to return on any later discovered prejudice to other beneficiaries or claimants. In re Thomson's Estate, 362 Mo. 1043, 246 S.W.2d 791, 29 A.L.R.2d 1239; Kopp v. Thomson, Mo., 277 S.W.2d 579. Thus, in every sense a partial distribution in Missouri is a conditionally returnable advance upon the amount finally to be distributed by the order of final distribution. This continues to be the law in Missouri. See 2 Maus, Missouri Probate Administration §§ 1438–1439, pp. 570–572, to the following effect:

"[The provisions of § 473.613, *supra*, and 473.617 RSMo, providing that upon final distribution the court is expressly required to specifically approve any order of partial distribution or for good cause modify the same] clearly imply that an order of partial distribution made upon notice is not conclusive, but final distribution is to be made in accordance with what would have been the fair share of the distributee or claimant had not the order of partial distribution been entered \* \* \*. If partial distribution is made upon the application of an executor or administrator, within a reasonable time after that distribution and before entry of the decree of final distribution the court may order the distributee to return all or part of the property or the value thereof. If partial distribution is

made upon the application of one other than the executor or administrator, at any time before the decree of final distribution, the court may order the distributee to return all or a part of the property or the value thereof * * " See also 22 J. of Mo. Bar 397 (May 1966); Berry, "New Legislation Affecting Probate Practice", 23 J. of Mo. Bar 393 (Sept. 1967).

■■ Under Missouri law, also, it is the rule that the income of an estate is liable for taxes and the costs and expenses of administration not finally determinable in amount until the approval of the final settlement and final allowance of attorney's and executor's fees, which, in this case, is quite likely to equal or exceed the income of $29,076.-15 in question. Recently, in the case of In re Estate of James, Mo.App., 431 S.W.2d 660, it was stated:

"It may be granted * * * where there is no surviving spouse and there are no secured claims, the expenses of administration are entitled to priority, 4 Maus, Missouri Practice, § 970, pp. 249–250 (1960), and it may further be granted that disbursements, reasonable in amount and for services necessary in the proper discharge of the duties imposed upon him, will constitute a charge in favor of the personal representative against the estate, although their allowance leaves no surplus to pay creditors. * * * It is clear that all claims against the estate of a deceased person must be paid in the order of their priority, and a personal representative who pays a claim out of order or in the wrong proportion may be liable for the overpayment. * * * Until the amount of all lawful demands against the estate and their order of priority is known, one cannot determine precisely the number of claims which have been improvidently or disproportionately paid."

Further, the personal property of the estate is the fund from which initially taxes and the costs and expenses of administration must be paid under Missouri law. In re Poe's Estate, Mo., 356 Mo. 276, 201 S.W.2d 441, 444, it was held that federal estate taxes were properly paid out of the personal property of the estate rather than the real property. To the same effect is Hammond v. Wheeler, Mo., 347 S.W.2d 884, 887–888. "[P]ersonal property is the property out of which taxes, including the federal estate tax, must be paid under Missouri law when, as in this case, the personal property is sufficient." United States v. Traders National Bank of Kansas City (C.A.8) 248 F.2d 667, 669. According to the evidence heard in this case, during the year 1957, the estate of Peter T. Bohan paid out the following in cash during that year:

| | |
|---|---|
| January 2, 1957, to director of Internal Revenue (estate tax) | $113,778.43 |
| January 15, 1957, to director of Internal Revenue (estate tax) | $4,451.27 |
| April 1, 1957, cash bequests to legatees other than plaintiff | $30,500.00 |
| April 15, 1957, fiduciary income tax | $8,000.00 |
| May 15, 1957, fiduciary income tax | $417.86 |
| | $157,147.56 |

Thus, sizeable payments were being made from the personal property of the estate, which were quite likely to equal or exceed the income here in question. Under these circumstances, the partial distribution to plaintiff in that year cannot be deemed conclusive.

■■ This Missouri law is particularly applicable to the administration of the estate of Peter T. Bohan, deceased, wherein other beneficiaries of the will of the deceased may suffer diminution of their respective specific legacies if the partial distribution made under the above Missouri law were deemed to be final. The will of the deceased which was being administered in 1957 (and which was entered in evidence herein as plaintiff's exhibit 1) contains the following specific bequests:

"Item II. I bequeath to my niece, Dorothy Greenwood, the sum of Three Thousand Dollars ($3,000.00).

"Item III. I bequeath to my nieces, Mabel Howe, of Seaton, Illinois, Mad-

elyn Otto, of Seaton, Illinois, and Marian Voorhees, and to my nephew, Ward Callahan, of Galesburg, Illinois, the sum of Two Thousand Dollars ($2,000.00) each.

"Item IV. I bequeath to my nephews, William Bohan, of Coffeyville, Kansas (son of my nephew, Cletus Bohan), John Lynch Bohan, William Bohan, Robert Bohan and Peter Bohan, of Galesburg, Illinois, the sum of Three Thousand Dollars ($3,000.00) each.

"Item V. I bequeath to Willis and Marquerite Munger, my brother-in-law and sister-in-law, jointly, the sum of One Thousand Dollars ($1,000.00). If either of them does not survive me, then I bequeath said sum to the other. If neither of them survives me, then this bequest shall lapse and shall become a part of my residuary estate.

"Item VI. I bequeath to James H. Danglade, Jr., the son of Doctor James H. Danglade, the sum of One Thousand Dollars ($1,000.00).

"Item VII. I bequeath to William Berry and Jane Berry, son and daughter of Doctor M. J. Berry, the sum of One Thousand Dollars ($1,000.00) each.

"Item VIII. I bequeath to St. Margaret's Hospital, in Kansas City, Kansas, the sum of Five Hundred Dollars ($500.00).

"Item IX. I bequeath to each person who shall have been employed by me in my office or in my professional work for one year or more immediately preceding the date of my death a sum equal to five per cent of such person's salary for the twelve months' period last preceding the date of my death."

Thus specific bequests in excess of $30,000 were made by the will of the decedent.

It is therefore apparent that other distributees or claimants of the estate might have been "deprived of the fair share or amount which they would otherwise receive on final distribution," as stated in the above applicable Missouri statute, if the distribution were deemed to be properly finally paid, credited, distributed or required to be distributed in 1957, or any other year prior to the closing of the estate.

In 1957 the distributed corporate stock remained subject to the debts of the estate, unpaid taxes, if any, and costs of administration, and liable to return if necessary to conform to the final order of distribution. The partial distribution of corporate stock was therefore returnable in the event that debts and expenses required invasion of the portions of the estate which had been specifically bequeathed by decedent or it was discovered before the decree of final distribution that other beneficiaries, creditors or claimants had been prejudiced by their payment. Therefore, the securities cannot be deemed to have been distributable, required to be distributed currently, properly paid, credited or distributed to plaintiff until the decree of final distribution or until the partially distributed corporate stocks were not subject to return. On March 9, 1964, the components of the residuary estate were finally determined and final distribution was made. Under Missouri law, the title of a legatee, though it equitably vests at the death of the decedent, is still subject to the rights of creditors and to charges and expenses of administration. Williams v. Patterson, 240 Mo.App. 131, 218 S.W.2d 156. Legal title of personal property must be obtained by the process of administration and distribution. Pinet v. Pinet, 239 Mo.App. 500, 191 S.W.2d 362. Deferment of vesting of the legal title is necessary, for obvious reasons, in the case of a residuary legatee. Therefore, the sums in question are not includible in plaintiff's 1957 income, and plaintiff was not liable for the additional assessment made by defendant. The amount wrongfully assessed and with interest should be refunded to plaintiff.

In this case, it is not necessary to reach the question of whether payments of either corpus or income or both are included in the scope of the controlling

sections of the Code. When the amounts are not properly distributable under the applicable provisions of the law of the state which controls the administration of the estate, they do not come within those terms, whether income or corpus. In this regard, defendant's citation of United States v. Bank of America, *supra,* to the effect that Section 661(a) has a broad application omits to mention that the same case qualifies its dictum by stating that the sections upon which the Government here relies:

> "* * * do not purport to change the rule that the disposition of the income deemed to have been received by the distributee * * * is governed by the local law, and the Code makes clear that tax consequences attach according to the actual disposition of that income pursuant to local law." 326 F.2d at 54.

▓▓ Under the applicable Missouri law it is apparent that, in the absence of exceptional circumstances not present in this case, the residuary estate is not properly paid, credited, or required to be distributed until the decree of final distribution. The federal statutes and cases relied on by the defendant recognize that state law determines the critical issues in a case such as this. In Commissioner of Internal Revenue v. Stearns, *supra,* it is held that the words "properly paid" and "credited" are equivalents for each other and mean that the "income must be so definitively allocated to the legatee as to be beyond recall" and that "distributions at the discretion of the fiduciary, must be actually made, or irrevocably fixed, before they become the beneficiary's as of right". 65 F.2d at 373. So, such amounts are income to the beneficiary only if "he has become presently entitled to them, or received them." Id. See also Bond's Estate v. United States, 326 F.2d 999, 164 Ct.Cl. 180, 187; Harris v. United States (C.A.4) 370 F.2d 887; and Hay v. United States (N.D.Tex.) 263 F.Supp. 813 and cases therein cited. In the last case, the Court held that in order to be deemed "properly paid or credited" by a discretionary trust within the meaning of the Code the "income must have been irrevocably and unconditionally placed at the disposal of the beneficiary." 263 F.Supp. at 820. That case also distinguished Section 662(c) from the sections applicable in the case at bar. The former section rules that when the taxable years of the beneficiaries, on the one hand, and estates or trusts, on the other, are different, amounts which are actually paid, credited or required to be distributed to the beneficiaries "during" their taxable years are the only amounts properly includible in their gross incomes. In that respect, it was noted that the difference in the words "for", used in Sections 662(a) and (b), and "during", used in Section 662(c), "is clearly substantial." Such a distinction makes it very clear that the amounts partially distributed to plaintiff in 1957 should not be includible in her income for that year, even though provisionally paid during that year, because they were not properly paid, credited or required to be distributed *for* that year. In this case the amounts were not properly payable, creditable or distributable in any final sense until some year succeeding 1957. The monies, further, were not placed "unconditionally and irrevocably at [the] disposal" of the plaintiff to constitute payment of them *during* 1957, although more than that may be required by law. Frank's Trust of 1931 v. Commissioner of Internal Revenue (C.A.3) 165 F.2d 992; Cf. Richards' Estate v. Commissioner of Internal Revenue (C.A.2) 150 F.2d 837, 839, holding that monies must "be placed unconditionally at the disposal of the petitioner" to constitute "constructive receipt"; and Commissioner of Internal Revenue v. Guitar Trust Estate (C.A.5) 72 F.2d 544. See also Plimpton v. Commissioner of Internal Revenue (C.A.1) 135 F.2d 482; Helvering v. Lynchburg Trust & Savings Bank (C.A. 4) 68 F.2d 356, cert. den. 292 U.S. 640, 54 S.Ct. 773, 78 L.Ed. 1492, holding that to be credited to a legatee within the meaning of former Section 162(b) of

the Revenue Act of 1928 (the predecessor present Section 662(b)), the trust income must be allocated to him beyond recall. See also Grant v. Nicholas (D. Colo.) 127 F.Supp. 236, 241; Anno. 117 A.L.R. 372, 379. The clear provisions of Missouri law applicable to the partial distribution in question are that the residuary legatee was not in 1957 irrevocably or unconditionally entitled to the residuary estate or any part thereof. Nor was plaintiff irrevocably entitled to the partial distribution until all debts and other obligations had been paid or finally allowed so that the composition of the residuary estate could be unconditionally determined and apportioned among the specific and residual legatees.

In McCauley v. United States (E.D. Ark.) 193 F.Supp. 938, it was held that sums actually paid to a widow of a decedent (who was also executrix of the decedent's estate) and placed in her personal bank account were not properly paid, credited or distributed to her for the purposes of income taxation "if she actually and in good faith recognized such income as the property of the estate and not of herself in her individual capacity." In the case at bar, by operation of law, plaintiff was bound to recognize that the partial distributions were still part of the estate and subject to recall.

There is nothing in the applicable regulations, §§ 1.661, 1.662 and 1.663(a), Federal Tax Regulations, which supports the contentions of defendant.

For the foregoing reasons, on January 29, 1971, this Court entered its findings of fact, conclusions of law and judgment in the sum of "$7,894.82, the amount of the deficiency assessed against her by defendant, the interest thereon according to law, and her costs." This was the amount which plaintiff sought in her complaint and which defendant admitted in its answer that plaintiff had paid. Throughout the course of the pleadings in this case, and in the subsequent briefs, both parties continued to refer to this case as one for refund of $7,894.82. In a supplemental pretrial order filed herein on February 14, 1969, however, the parties agreed:

> "that should the plaintiff prevail: (a) there would be an overpayment in tax of $17,024.04 to her account and a deficiency in tax to the account of the Estate of Peter T. Bohan, of which she is the transferee, of $11,020.79; and (b) that the assessed interest to be refunded on the net amount would be $1,853.00."

In the subsequent trial of this cause, the parties agreed that if the plaintiff should prevail, they would prepare a judgment in accordance with the supplemental pretrial order filed. The amount due under the supplemental pretrial order appeared to be $7,856.25. In accordance with the agreement, however, on February 8, 1971, the Court entered its order vacating the judgment of January 29, 1971, for the purpose of recomputing the amount of recovery in accordance with the agreement of the parties and requesting that a stipulated amount of judgment be filed. On February 23, 1971, plaintiff submitted the stipulated amount of $7,856.25, and counsel for defendant notified the Court subsequently that he was in agreement with this figure.

The vacated judgment of January 29, 1971, will therefore be reentered in all essentials except the amount thereof, which will now be in the principal sum of $7,856.25.

For the foregoing reasons, it is hereby

Ordered and adjudged that plaintiff have and recover from the defendant the sum of $7,856.25, the excess amount of the deficiency assessed against her by defendant, and interest thereon according to law, and her costs.